# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BONITA S. ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-062-SLR |
| | ) |
| MICHAEL ASTRUE, Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

Paul G. Enterline, Esquire of Georgetown, Delaware. Counsel for Plaintiff.

Charles M. Oberly, III, Esquire, United States Attorney, District of Delaware, Patricia A. Stewart, Esquire, Special Assistant United States Attorney, District of Delaware, and Dina White Griffin, Esquire, Special Assistant United States Attorney, District of Delaware. Counsel for Defendant. Of Counsel: Eric P. Kressman, Esquire, Regional Chief Counsel, and Shannon Petty, Esquire, Assistant Regional Counsel of the Office of General Counsel, Philadelphia, Pennsylvania.

## MEMORANDUM OPINION

Dated: November 10 , 2011
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Bonita Anderson ("plaintiff") appeals from a decision of Michael J. Astrue, the Commissioner of Social Security ("defendant"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Plaintiff has filed a motion for summary judgment asking the court to find her disabled or remand the case for further proceedings. (D.I. 13) Defendant has filed a cross-motion for summary judgment, requesting the court to affirm his decision and enter judgment in his favor. (D.I. 15) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).[1]

## II. BACKGROUND

### A. Procedural History

Plaintiff filed for DIB on April 18, 2005, claiming she had been disabled since December 15, 2003 due to severe migraines, coronary artery disease, carotid artery disease, arthritis, degenerative disk disease and chronic pain. (D.I. 11 at 177) Plaintiff's DIB claim was initially denied on April 7, 2006. (*Id.* at 88) It was denied on reconsideration on February 22, 2007. (*Id.* at 89) On May 13, 2008, a hearing on

---

[1] Under § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .

42 U.S.C. § 405(g).

plaintiff's DIB claim was held in front of Administrative Law Judge ("ALJ") Melvin D. Benitz. At the hearing, the ALJ heard testimony from plaintiff, her grandmother Geneva Fry and a vocational expert ("VE"), Ellen C. Jenkins. (*Id.* at 39) Irene Gianesses, plaintiff's roommate, also provided the ALJ with a letter attesting to her observations on plaintiff's physical activities. In a decision issued August 8, 2008, the ALJ found that plaintiff was not disabled because, while she could not perform her past work, she could perform other work available in the national economy. (*Id.* at 25-28) The Appeals Council denied plaintiff's request for review and, therefore, the ALJ's decision became defendant's final decision. (*Id.* at 1) Having exhausted her administrative remedies, plaintiff filed a civil action in this court on January 26, 2010, seeking review of defendant's decision to deny her DIB.

## B. Plaintiff's Non-Medical History

Plaintiff was born on September 7, 1953. (*Id.* at 132) She has a high school education (*id.* at 185) and has been previously employed as an office manager and bookkeeper. (*Id.* at 75) Her date last insured ("DLI") was December 31, 2006, making December 15, 2003 (her alleged onset date) through December 31, 2006 (her DLI) the relevant period at issue.

## C. Plaintiff's Medical History[2]

In June of 2003, Dr. Balepur Venkataramana performed an anterior cervical diskectomy and fusion surgery on plaintiff, removing her C4-5, C5-6 and C6-7 vertebrae

_____

[2] Because the only medical evidence directly at issue on this appeal relates to plaintiff''s complaints of cervical disk disease, migraines, upper extremity arthritis and chronic pain, the background presented in this section will be limited to those alleged impairments.

2

and stabilizing the area with a plate and screw system. (*Id.* at 211) The procedure was performed in response to herniated disks that had been identified in those regions. (*Id.* At 260) Dr. Venkataramana followed up with plaintiff several times post-operatively, the last time being September 11, 2003. (*Id.* at 260) While he acknowledged that plaintiff still had some pain and had made an appointment to see a pain specialist, Dr. Venkataramana opined that he would have "released the patient for light work" as of September 2003. (*Id.*)

Following her surgery, plaintiff met with several physicians and complained of pain radiating from her back and into her neck and extremities. Multiple MRIs of plaintiff's back and neck were done following her surgery, including MRIs taken October 16, 2003, May 2, 2005 and August 21, 2006, but none revealed any abnormalities (i.e., no evidence of misalignment, herniation, disk bulge or stenosis). (*Id.* at 248; 246; 838)

Dr. Gabe Somori, a pain management physician at Costal Pain Care Physicians, met with plaintiff on October 8, 2003. (*Id.* at 361-62) He initially diagnosed plaintiff as having: (1) chronic neck and shoulder pain with no evidence of cervical radiculopathy; (2) chronic low back pain; (3) migratory joint pains; and (4) a history of migraine headaches. (*Id.*) Throughout the period at issue, Costal Pain Care Physicians and Dr. Somori treated plaintiff's complaints of chronic pain. (*Id.* at 334-60; 789-95) Specifically, her complaints related to neck pain, back pain, pain radiating into her extremities and migraine headaches. (*Id.*) Plaintiff was proscribed various pain relievers in various dosages and combinations throughout the relevant period. (*Id.*) Plaintiff consistently rated her pain as a seven or above on a ten point scale. (*Id.*) In

June of 2006, Dr. Somori made a handwritten notation in plaintiff's chart of "failed cervical laminectomy." (*Id.* at 334)

Dr. Kevin Wallace, a physician involved in treating plaintiff's neck and back pain, referred plaintiff to Dr. Paul E. Howard in reference to plaintiff's "severe almost daily headaches [that she has had] for many years." (*Id.* at 261) In a letter to Dr. Wallace, Dr. Howard stated that he would agree with Dr. Wallace's assessment that plaintiff suffered from vestibular migraines. (*Id.*)

On December 27, 2005, at the request of the agency, plaintiff was examined by Dr. Beshara Helou. (*Id.* at 262-65) Dr. Helou concluded that: (1) plaintiff had a "limited range of motion" in her cervical spine as a result of her surgery; (2) "mild radiculopathy" in her lumbar spine that "seems to be clinically insignificant;" (3) "chronic pain syndrome due to multiple musculoskeletal problems;" and (4) "chronic daily headaches" that have been difficult to treat with medication because of other medications plaintiff was taking. (*Id.*)

On April 4, 2006, at the agency's request, Dr. Anne Aldridge reviewed plaintiff's medical records and provided a residual functional capacity assessment. (*Id.* at 269-76) Dr. Aldridge concluded, based upon plaintiff's past medical history, that plaintiff: (1) could occasionally lift twenty pounds and frequently lift ten pounds; (2) could stand/walk or sit for six hours in an eight hour workday; (3) had an unlimited ability to push and pull; (4) could not balance; and (5) could frequently reach in all directions (but not do so continuously overhead). (*Id.*) Dr. Aldridge also opined that plaintiff "appears capable of light RFC." (*Id.* at 271)

4

### D. Hearing Before The ALJ

#### 1. Plaintiff's testimony

At her hearing, plaintiff testified at length about her medical problems. (*Id.* at 40-71) Her testimony can be summarized as follows:

- Plaintiff has a work history of bookkeeping and secretarial work.
- Plaintiff claims to have missed significant amounts of work (several days in a week) due to chronic back and neck pain and migraines. She describes the migraines as constant and causing blurred vision and nausea. She says she needs to lay down in a quiet room in order to obtain relief from the migraines. She also says that she was terminated from several jobs because she needed to miss so much time.
- Plaintiff has taken a variety of prescription medications to treat her pain. According to plaintiff, the side effects of her medications include drowsiness and nausea.
- Plaintiff had an anterior cervical diskectomy and fusion surgery in 2003 because of cervical pain and now has a limited range of motion because of the plates inserted into her neck.
- Plaintiff complains of an inability to sleep due to pain.
- Plaintiff complains that she cannot sit or stand or walk for any long periods of time without pain.
- Plaintiff claims she can not perform bookkeeping and/or secretarial work due to constant pain, the side effects from her medications, an inability to

5

concentrate, an inability to sit for long periods and an inability to handle

pressure and stress, particularly with respect to deadlines and numbers.

•    Plaintiff claims she cannot do housework or chores because of pain.

(*Id.*)

## 2. Geneva Fry's testimony

Plaintiff's grandmother, Geneva Fry, testified on plaintiff's behalf. According to

Mrs. Fry, three or four times a week, plaintiff would be in so much pain that she could

not comprehend that someone was speaking to her. (*Id.* at 72) She also explained

that, while plaintiff tried to help out around the house, she could not. (*Id.* at 73) Ms. Fry

confirmed that plaintiff's medications made her drowsy. (*Id.*)

## 3. VE's testimony

The hypothetical question that the ALJ asked the VE is as follows:

Past relevant work as indicated. Suffering from various ailments, including
degenerative disk disease of the lumbar and of the cervical. She's had a
fusion at the cervical level. She had some heart trouble back in the '90's.
She indicated she had a couple of heart attacks. Now has some chest pain
on occasion. But she does have moderate pain and discomfort as a result
of her degenerative disk disease of the back/neck, all of which are somewhat
relieved by her medications, without significant side effects, but she indicates
she gets drowsy from one or a combination. And if I find she needs simple,
routine, unskilled jobs . . . low stress, low concentration, low memory due to
her pain and depression; and if I find she is moderately able to perform her
ADL's, interact socially, and maintain concentration, persistence, and pace;
and can lift 20 pounds frequently,[3] 20 on occasion; stand for 20 or 30
minutes - - strike that. Stand for 10 minutes, sit for 20 or 30 minutes
consistently on an alternate basis during an eight-hour day five days a week;
have to avoid heights and hazardous machinery due to her condition; no
prolonged climbing, balancing, or stooping, and by that, I mean no more than
once or twice an hour. With those limitations, she'd be able to do light work

---

[3] The Court notes that the ALJ's RFC assessment in his decision permits
frequent lifting of **10** pounds, not 20. (D.I. 11 at 21)

> activities? . . . Give me jobs that exist out there in the national economy .
> . . such a person can do in significant numbers.

(*Id.* at 78) In response to this hypothetical, the VE testified that plaintiff could perform
the jobs of interviewer, non-postal mail sorter and library clerk, all of which are available
in significant numbers in the national and local economies. (*Id.* at 79) And according to
the VE, these three positions "can be accommodated with a sit/stand option,"
something the VE knows from having placed other persons in such positions. (*Id.*)

## E. Ms. Gianesses's Letter

In a letter dated May 13, 2008 and provided to the ALJ at some point thereafter,
Ms. Gianesses "attest[ed] to [her] observations (as a roommate) to [plaintiff's] physical
activities."[4] (*Id.* at 209) In this letter, Ms. Gianesses asserted that: (1) plaintiff is in pain
90% of the time and cannot do household chores as a result of the pain; (2) plaintiff
cannot sit for long periods; and (3) pain keeps the plaintiff up at night which leaves her
tired during the day. (*Id.* at 209-10)

## F. Regulatory Framework

The Social Security Administration is authorized to pay DIB to persons who are
"under a disability." 42 U.S.C. § 423(a)(1)(E). Social Security Administration
regulations incorporate a five-step sequential evaluation process for determining
whether a claimant is under a disability. 20 C.F.R. § 404.1520; *Sykes v. Apfel*, 228
F.3d 259, 262-63 (3d Cir. 2000) (citing 20 C.F.R. § 404.1520). The ALJ first considers

---

[4] The letter does not provide a time frame regarding when plaintiff and Ms.
Gianesses were roommates and, thus, it is unclear whether Ms. Gianesses's
observations apply to the relevant time period; the ALJ notes this in his decision. (D.I.
11 at 25)

whether the claimant is currently engaged in substantial gainful activity.[5] If he is not,
then the ALJ considers in the second step whether the claimant has a "severe
impairment" that significantly limits his physical or mental ability to perform basic work
activities. If the claimant suffers a severe impairment, the third inquiry is whether,
based on the medical evidence, the claimant's impairment meets the criteria of an
impairment found in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1
(1999). If the claimant's impairment or combination of impairments meets or equals an
impairment set forth in the listing of impairments, the claimant is disabled. If the
impairment does not meet the criteria for a listed impairment, then the ALJ must first
determine the claimant's residual functional capacity ("RFC") before moving on to the
fourth and fifth steps of the evaluation process. RFC is defined as the most physical
and mental work activity an individual can perform despite limitations resulting from his
impairments. 20 C.F.R. § 404.1545. At step four, the ALJ assesses whether, despite
the existence of the severe impairment, the claimant has the RFC to perform his past
work. Assuming he can, he is not disabled. If, however, the ALJ determines that the
claimant cannot perform his past work, then, at step five, the ALJ must determine
whether there is other work in the national economy that the claimant can perform. If
the claimant can perform other work, he is not disabled; if he cannot perform other
work, he will be found disabled.

## G. The ALJ's Decision

---

[5] Substantial gainful activity is work activity that is both substantial and gainful.
20 C.F.R. § 404.1572. Work is substantial when it involves doing "significant physical
or mental activities." *Id.* Work is gainful when done for pay or profit. *Id.*

8

The ALJ ultimately concluded that plaintiff could perform other work in the

national economy and, therefore, was not disabled. The ALJ made the following

enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since December 15, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: cervical and lumbar degenerative disk disease, coronary artery disease, osteoarthritis, vestibular migraines, and chronic myofascial pain syndrome (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, routine, unskilled, low stress, low concentration, low memory, light work as defined in 20 CFR 404.1567(b) except that she could lift 20 pounds occasionally, 10 pound [sic] frequently, sit for 20 to 30 minutes, stand for 10 minutes continuously on an alternate basis during an 8 hour a [sic] day, 5 days a week, with no prolonged climbing, balancing and stooping, and avoiding heights and hazardous machinery.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 7, 1953 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2003 through the date of this decision (20 CFR 404.1520(g)).

(D.I. 11 at 12-28)

## III. STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. See id. In other words, even if the reviewing court would have decided the case differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. See id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual

10

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (internal citations omitted). Thus, in the context of judicial review under § 405(g), "[a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *See Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of the plaintiff's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

## IV. DISCUSSION

Plaintiff's summary judgment motion identifies four[6] reasons why plaintiff

_____

[6] Plaintiff's brief only sets forth three arguments; however, within one of those arguments, an alternative but related argument exists. For clarity's sake, the court discusses plaintiff's arguments in four separate sections.

believes the unfavorable decision is not based on substantial evidence. (D.I. 14 at 2)

First, plaintiff argues that the ALJ's RFC finding is incorrectly designated light work. (*Id.* at 5-8) Plaintiff contends that the RFC actually places her in the sedentary work range and reference to the Medical-Vocational Guidelines at this range directs a finding of disabled. Second, plaintiff argues that the VE hypothetical did not properly include (1) limitations in reaching and neck movement despite ample evidence of her cervical disk disease and upper extremity arthritis; or (2) an allowance for unscheduled absences despite ample evidence that she suffers from severe migraines and chronic pain syndrome. (*Id.* at 8-12) Third, plaintiff argues that the ALJ failed to specify his reasons for rejecting evidence that supports a contrary result despite circuit law requiring that he provide such an explanation. (*Id.* at 10-12) Lastly, plaintiff asserts that the ALJ improperly extended his disability determination beyond the relevant period of review. (*Id.* at 13-14)

## A. Is Plaintiff Limited to Sedentary Work and, Therefore, Disabled?

### 1. Standards

At step five of the sequential analysis, the ALJ will consult the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, subpt. P, App 2, often called "the grids," in order to determine whether an individual is disabled or not (i.e., to determine whether an individual, who is unable to perform his or her past work, can perform other work). The grids were adopted in 1979 to increase consistency and promote uniformity in disability determinations. Social Security Ruling ("SSR") 83-10 at *1. The grids do this by directing a "disabled" or "not disabled" finding based upon the interplay between

12

certain factors. *Id.* These factors include plaintiff's age, education, work experience and RFC. A party's RFC is classified based upon the extent of extertional activity he or she can perform - sedentary, light, medium, heavy or very heavy. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers or small tools." *Id.* at *5. Sedentary work is "performed primarily in the seated position," "entails no significant stooping," and requires standing and walking only "occasionally" (occasionally being defined as occurring "up to one third of the time"). *Id.* Light work, on the other hand, involves a "good deal of walking or standing." *Id.* The "primary difference" between a sedentary and light job is the amount of sitting and/or standing required. *Id.* Light work also involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" (with frequent being defined as occurring between one-third and two-thirds of the time). *Id.* at *5-6.

Often times the grids cannot be applied precisely because, for example, an individual's extertional capabilities fall somewhere between the light and sedentary categories. In a situation like this, a decision of "disabled" or "not disabled" is not directed by the grids; instead, the grids serve "as guidance for decisionmaking." *Id.* at *1. When an individual's extertional abilities fall somewhere between two established categories (such as sedentary and light) and those categories direct opposite conclusions (i.e., "disabled" and "not disabled"), the ALJ should consider that: (1) an exertional capacity that is only slightly reduced may still permit a finding of not disabled; (2) an exertional capacity that is significantly reduced may require a finding of disabled;

13

and (3) because these are difficult judgment calls that often require expert opinion, consulting a VE is appropriate. SSR 81-12 at *12.

## 2. Analysis

In the present case, plaintiff contends that, although ALJ Bentiz referred to her RFC as one for light work, "it is actually an RFC for sedentary work." (D.I. 14 at 5) And assuming the RFC was for sedentary work, this is beneficial to plaintiff because the grids would direct a finding of disabled under 20 C.F.R. Pt. 404, subpt. P, App 2, Rule 201.14.[7] (Id.) Plaintiff goes on to argue that, "because the jobs identified by the VE would need to be performed at the sedentary level . . . they cannot be relied upon to support an unfavorable decision for a [plaintiff] who is disabled if limited to sedentary work." (Id. at 7) Plaintiff contends that this is a sedentary RFC based upon two observations. (Id. at 5-8) First, plaintiff argues that, since the ALJ's RFC does not permit frequent standing and the primary difference between a sedentary and light job is the amount of standing required, this is a sedentary RFC. (Id.) Second, plaintiff contends that, since frequent lifting requires frequent standing and the RFC does not permit frequent standing, plaintiff cannot do the frequent lifting required under the ALJ's light RFC assessment. (Id.) In support of these observations, plaintiff directs the court to Campbell v. Astrue, Civ. No. 09-5356, 2010 WL 4689521 (E.D. Pa. Nov. 2, 2010), and contends that the case "squarely" addresses the issues at bar. (D.I. 18 at 2-3) Defendant disagrees with plaintiff, arguing that, because plaintiff's exertional capacity fell somewhere between light and sedentary, a VE was properly consulted in order to

---

[7] Defendant does not appear to dispute that the grids would direct a finding of disabled assuming plaintiff's RFC was classified as sedentary.

14

determine whether plaintiff could find other work in the national economy, and the VE's

conclusion that other work exists constitutes substantial evidence. (D.I. 16 at 15-18)

In *Campbell*, the ALJ's RFC determination was as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a narrowed range of light work as defined in 20 CFR 404.1567(b) which requires standing or walking for no more than one to two hours in an eight hour work day and which requires sitting for up to eight hours in an eight hour work day. The claimant is limited to performing work which requires lifting no more than twenty pounds occasionally and ten pounds frequently. In addition the claimant is limited to jobs which allow the option of sitting or standing at will. The claimant can frequently (but not constantly) engage in postural positions such as bending, stooping, kneeling, crouching, and crawling but should avoid heights, moving machinery, vibrations, and the climbing of ropes, ladders, or scaffolding.

*Campbell*, 2010 WL 4689521 at *3. At a hearing, the ALJ asked a VE whether plaintiff

could hypothetically perform work in the national economy given the limitations

identified in his RFC. *Id.* The VE testified that the plaintiff could work in spite of his

limitations and identified several possible jobs. *Id.* In light of the VE's testimony, the

ALJ determined that plaintiff was not disabled. *Id.*

Based upon the ALJ's unfavorable decision and the RFC he used to arrive at his

decision, the plaintiff appealed. On appeal, the plaintiff and defendant in *Campbell*

made the same arguments that plaintiff and defendant make in the present case; in

other words, plaintiff argued that the RFC was actually sedentary and plaintiff "gridded

out" as disabled, and the defendant argued that the ALJ properly consulted and relied

on VE testimony where the plaintiff's exertional level fell between the light and

15

sedentary levels.[8]

After careful consideration of the parties' arguments, the *Campbell* court

concluded that:

> "[I]t would seem at first blush that the ALJ's RFC placed Campbell essentially **between** the sedentary and light exertional levels, as he did not fit neatly within either category, and that the ALJ properly complied with Commissioner's rulings advising him to use the grids only as a framework for decisionmaking and to take into account VE testimony as to how much the claimant's various limitations erode the occupational base. *See, e.g.,* SSR 83-12. We agree with Plaintiff, however, that the ALJ's finding that his RFC allowed for a "narrowed range of light work" is problematic in two senses.

*Id.* at *4 (footnotes omitted). First, the court explained that the ALJ's characterization of

plaintiff's exertional capabilities as falling within the light range "is incongruent" with the

ALJ's particularized finding that Campbell could only stand or walk for one to two hours

a day. *Id.* at *5. As discussed, the primary difference between light and sedentary work

is the amount of sitting and/or standing/walking required. Based upon the ALJ's finding

that Campbell could only stand or walk for one or two hours in an eight-hour day (one-

_____

[8] Specifically, the *Campbell* court explained that:

> The parties here disagree on the propriety of the ALJ's divergence from the grids. Plaintiff contends that, while the ALJ broadly described his RFC as at the "light" exertional level (although admittedly subject to additional limitations, which rendered Rule 202.14 and its finding of "not disabled" inapplicable), in reality, the ALJ was describing the capability of someone limited to the sedentary level-which would result in him "gridding out" as disabled pursuant to Rule 201.14. The Commissioner contends that the ALJ appropriately concluded that Campbell's RFC matched neither grid rule, based upon his assessment that Campbell could perform a "limited range" of light work, and that the ALJ thus properly consulted a VE for specific testimony concerning the work that Campbell would be capable of performing notwithstanding those various limitations.

*Campbell*, 2010 WL 4689521 at *4.

16

eighth to one-fourth the day), the *Campbell* court concluded that the RFC more closely corresponded with the sedentary level, which is characterized as requiring standing or walking on an occasional (less than one-third of the day) basis. Second, the *Campbell* court noted that there was "an inherent contradiction" between the ALJ's finding that Campbell could frequently lift ten pounds, which requires frequent standing or walking (between one-third and two-thirds of the day), when he was only able to stand for one to two hours in an eight-hour work day (up to one-fourth of his day). *Id.* Based upon these incongruities and contradictions, the *Campbell* court was compelled to remand. *Id.* at *6.

Despite plaintiff's assertion, the same "inherent contradictions" and "incongruities" present in *Campbell* do not exist in the present case. While plaintiff argues that her RFC does not permit frequent standing, that is not an accurate depiction of the ALJ's RFC. Plaintiff's RFC included a sit-stand option whereby the plaintiff could "sit for 20 to 30 minutes [and] stand for 10 minutes continuously on an alternate basis during an 8 hour day." In other words, plaintiff needed to be able to sit and stand on an alternate basis and could stand between one-third and one-half of her work day. Given that plaintiff can stand for between one-third and one-half of her work day, she is not limited to the "occasional" (up to one-third) standing that is indicative of sedentary work. Moreover, while plaintiff cannot lift for a full two-thirds of her day because she can only stand for up to one-half of her day, her ability to lift between one-third and one-half of her day could still be characterized as "frequent" lifting since frequent is defined as occurring between one-third and two-thirds of a day.

17

Instead of having the inherent contradictions and incongruities present in

*Campbell*, the ALJ in the present case had an RFC that placed plaintiff somewhere

between the light extertional level, which contemplates prolonged standing, and the

sedentary extertional level, which contemplates prolonged sitting. Faced with this

scenario, the ALJ, in accordance with Social Security Ruling ("SSR") 83-12, consulted

and relied on VE testimony in order to help him make the difficult decision of whether or

not plaintiff was disabled during the relevant period. *See* SSR 83-12 at \*4 (explaining

that VEs should be consulted where alternate sitting and standing is required). While,

however, this consultation may have been appropriate based on the ALJ's RFC finding,

for the reasons discussed more fully below, the court is constrained to remand this case

back to the ALJ for another RFC determination.

## B. Did the VE Hypothetical Include All Established Limitations?

### 1. Standards

As the Third Circuit explained in *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd

Cir. 1984):

> Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy. While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.

Reliance on an expert's answer to a hypothetical question will not constitute substantial

evidence unless all credibly established limitations are included; remand is required

where the hypothetical question is deficient. *Id*; *Rutherford v. Barnhart*, 399 F.3d 546,

554 (3rd Cir. 2005). Third Circuit case law and governing regulations have provided

guidance on whether a limitation is "credibly established:"

> [First, l]imitations that are medically supported and otherwise uncontroverted
> in the record, but that are not included in the hypothetical question posed to
> the expert, preclude reliance on the expert's response. [Second, and
> r]elatedly, the ALJ may not substitute his or her own expertise to refute such
> record evidence. [Third, l]imitations that are medically supported but are also
> contradicted by other evidence in the record may or may not be found
> credible—the ALJ can choose to credit portions of the existing evidence but
> cannot reject evidence for no reason or for the wrong reason. Finally,
> limitations that are asserted by the claimant but that lack objective medical
> support may possibly be considered nonetheless credible. In that respect the
> ALJ can reject such a limitation if there is conflicting evidence in the record,
> but should not reject a claimed symptom that is related to an impairment and
> is consistent with the medical record simply because there is no objective
> medical evidence to support it.

*Rutherford*, 399 F.3d at 554.

With specific respect to establishing limitations based on a plaintiff's subjective

complaints of disabling pain, as previously discussed, an ALJ may only reject such

claims where he considers them, specifies his reason for rejecting them and supports

his conclusion with medical evidence in the record. *Matullo*, 926 F.2d at 245. 20

C.F.R. § 404.1529 and SSR 96-7p, which provides interpretive guidance on 20 C.F.R. §

404.1529, guide an ALJ with respect to subjective complaints of disabling pain and

credibility determinations that must be made with respect to such pain.[9]  The

---

[9] SSR 96-7p opens by noting that its purpose is to "clarify when the evaluation of
symptoms, including pain, under 20 CFR 404.1529 . . . requires a finding about the
credibility of an individual's statements about pain or other symptom(s) and its
functional effects; to explain the factors to be considered in assessing the credibility of
the individual's statements about symptoms; and to state the importance of explaining

regulations explain that an ALJ must undertake a two-step process in evaluating complaints of pain. SSR 96-7p at *2. First, the ALJ must determine whether there is an impairment that could reasonably be expected to produce pain. *Id.* Second, after making this determination, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* When subjective complaints of pain that are not substantiated by objective medical evidence are at issue, the ALJ's evaluation requires a finding as to the claimant's credibility. *Id.* The regulations require that credibility determinations be made based upon a review of the entire record. *Id.* at *2-3. Aside from objective medical evidence, the ALJ must consider the follow factors: (1) daily activities; (2) location, duration, frequency and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) effectiveness of medications used in treating pain; (5) treatments other than medications that alleviate pain; (6) any other non-treatment measures that help alleviate pain (such as lying down); and (7) any other factors that relate to the pain at issue. *Id.* at *3. Consistency in statements is another "strong indication" of credibility that should be considered. *Id.* at *5. Importantly, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and

---

the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." SSR 96-7p at *1

the reasons for that weight." *Id.* at *4. This degree of specificity "is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned . . . decision." *Id.*

### 2. Analysis

Plaintiff argues that the VE hypothetical question was deficient because it did not include limitations for unscheduled absences despite the evidence in the record concerning plaintiff's migraine headaches and myofasical pain syndrome. (D.I. 14 at 8-12) Plaintiff also argues that the VE hypothetical must have included limitations on the plaintiff's reaching and neck movement because the ALJ found her cervical disk disease and osteoarthritis to be severe impairments at step two of the sequential evaluation process.[10] (*Id*; D.I. 18 at 3-4)

#### a. Unscheduled absences due to migraines and chronic pain

As discussed more thoroughly in the background section of this opinion, several doctors diagnosed and treated plaintiff for migraine headaches. A state agency physician also noted that plaintiff had difficulty treating these migraines. Plaintiff also testified to the debilitating effect these migraines had on her; she testified that the migraines were constant, caused blurred vision and nausea, and relief was only

---

[10] Two basic challenges to hypotheticals exist: (1) that the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment; and (2) that the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert. *Rutherford*, 399 F.3d at 554. As just discussed, plaintiff is making two type two challenges. The court initially notes, however, that a valid type one challenge exists and provides another basis for remand. Specifically, when the ALJ posed his hypothetical to the VE, the ALJ stated that plaintiff could lift **20** pounds frequently; this was improper since his RFC explained that plaintiff could only lift 10 pounds frequently. *See supra*, pg. 6, n.3.

possible after laying down in a quiet room.

The ALJ's decision acknowledges that the migraines could cause plaintiff pain, but notes that the pivotal question is whether plaintiff's symptoms occur with such frequency, duration and severity as to preclude work activity on a continuing and regular basis. (D.I. 11 at 23-24) In other words, the ALJ acknowledges that he is required to make a credibility determination on plaintiff's complaints of debilitating migraine pain.[11] Despite this acknowledgment, the ALJ's RFC assessment makes only passing reference to plaintiff's migraines. The ALJ states that "Dr. Gohel noted that by April 2008, [plaintiff's] headaches were controlled with medication." (Id. at 24; 721) The ALJ also states that he provided limitations to avoid heights and hazardous machinery in consideration of plaintiff's migraine headaches. (Id.) These are the only references to plaintiff's migraines in the ALJ's RFC assessment, and Dr. Gohel's 2008 notation falls outside of the relevant time period at issue in this case.

Because an ALJ making a credibility determination on claims of disabling pain must (1) consider the entire record including objective medical evidence and the seven factors listed above,[12] (2) specify his reasons for rejecting such claims of disabling pain and support his conclusions with medical evidence in the record, and (3) do so with a fair amount of specificity, the court is constrained to remand for a more thorough

_____

[11] *See infra*, pg. 20, discussing this two-step evaluation process.

[12] While there is no absolute requirement that an ALJ discuss all seven factors, an ALJ should analyze "as many of these factors as is applicable in order to provide sufficient findings for judicial review." *Centeno v. Comm'r of Soc. Sec.*, Civ. No. 09-6023, 2010 WL 5068141, at *8 (D.N.J. Dec. 6, 2010)

examination of the medical evidence on plaintiff's headaches and the ALJ's decision to discount plaintiff's claim of disabling migraine headache pain. The ALJ's passing references are insufficient.

Just as the ALJ acknowledged that plaintiff had migraine headaches that could cause pain, the ALJ also explained that plaintiff had myofasical pain syndrome that could cause a degree of distress. (*Id.* at 23) And again, the ALJ explained that the pivotal question was whether plaintiff's symptoms occur with such frequency, duration and severity as to preclude work activity on a continuing and regular basis. (*Id.* at 24) In other words, a credibility determination was required. Regarding plaintiff's allegations of chronic pain, the ALJ discounted plaintiff's complaints by explaining that "[plaintiff's] pain was managed by pain medications when the [plaintiff] was treated by Dr. Somori."[13] (*Id.* at 24) The ALJ went on to say that he limited the plaintiff to simple, routine, unskilled, low concentration, low memory and low stress work in consideration of her pain. (*Id.*) As discussed, the ALJ must consider the entire record (including the seven factors discussed) and explain and support his credibility determinations with a degree of specificity. The ALJ's decision was limited to a brief and somewhat conclusory discussion of the relief provided to plaintiff through medication.[14] The ALJ's

---

[13] While the court assumes this was the ALJ's means of discounting plaintiff's claims of pain relating to her myofasical pain syndrome, the court notes that the ALJ refers only to "pain." Because the ALJ spends time elsewhere in his RFC assessment specifically discounting plaintiff's claims of pain relating to her other named impairments (e.g., her cardiac impairments, lumbar spine impairments, etc), the court's assumption is consistent with the record.

[14] The court also notes that the ALJ did not provide a completely accurate depiction of the medical evidence of record. While Dr. Somori's notes during the relevant period do acknowledge plaintiff obtaining some relief from the medication, the

23

decision also summarily dismisses the testimony of Ms. Fry that corroborates plaintiff's complaints of pain. (*Id.* at 25) This is insufficient; a more thorough examination of subjective pain is required.

In summary, the court will remand so that the ALJ can provide a more thorough examination of plaintiff's subjective complaints of disabling pain that is consistent with the law discussed in this opinion. The court recognizes that cervical, lumbar and cardiac impairments were the primary focus of plaintiff's case and it was understandable, therefore, that the ALJ would focus his decision on these issues. Because, however, plaintiff's appeal focuses on complaints of migraine headache pain and myofasical pain syndrome, remand for a more detailed discussion of these impairments is warranted.

### b. Reaching and neck movement limitations

To the extent plaintiff argues, based upon step two severity findings, that reaching and neck movement limitations were somehow mandated beyond what the ALJ set forth in his RFC, the court disagrees. (D.I. 18 at 3-4) As explained in *Holcomb v. Astrue*:

> The second step [of the five-step sequential evaluation process] is generally viewed as a **de minimis** screening device to dispose of groundless claims. To surmount this hurdle, a claimant need only demonstrate that he or she suffers from something more than a "slight abnormality" (or a combination of slight abnormalities) which has no more than a minimal effect on his or her ability to work. In this context, the word "severe" should not be construed in accordance with its typical meaning. The purpose of the second step . . . is to dispose of claims in which a claimant fails to make a reasonable threshold

notes do not suggest the relief was sustained for any significant period or that the relief could be characterized as substantial given plaintiff's relatively consistent pain score ratings.

showing that his or her impairment is one which could conceivably keep him
or her from working.

*Holcomb v. Astrue,* Civ. No. 07-863, 2008 WL 3539987, at \*5 (W.D. Pa. Aug. 13, 2008)
(citations and quotations omitted); *see also, Newell v. Comm'r of Soc. Sec.,* 347 F.3d
541, 549 (3d Cir. 2003); *McCrea v. Comm'r of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir.
2004). It is prior to step four, when making an RFC determination, that an ALJ decides
the extent to which symptoms related to an impairment would limit an individual's ability
to work. This requires the ALJ to weigh conflicting evidence and is the process the ALJ
followed in the present case when he decided, based upon the evidence presented,
that plaintiff's disk disease and osteoarthritis did not limit her beyond what he set forth
in his RFC assessment. The ALJ placed great weight on the opinions of Drs.
Venkataramana and Aldridge that plaintiff was capable of light work in spite of her
impairments. (*Id.* at 25)

## C. Failure to Examine the Evidence as Required by Circuit Law

### 1. Standards

The Third Circuit specifically requires that an ALJ explicitly weigh all relevant,
probative and available evidence and provide some explanation for the rejection of
probative evidence that would suggest a contrary disposition. *Adorno v. Shalala,* 40
F.3d 43, 48 (3rd Cir.1994) (citing *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3rd Cir.
1979) and *Brewster v. Heckler,* 786 F.2d 581, 584 (3rd Cir. 1986)). As the Third Circuit
stated in *Dobrowolsky v. Califano,* 606 F.2d at 406-07, "[t]his Court has repeatedly
emphasized that the special nature of proceedings for disability benefits dictates extra
care on the part of the agency in developing an administrative record and in explicitly

25

weighing all evidence." Put differently, "unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Gober v. Matthews*, 574 F.2d 772, 776 (3rd Cir. 1978) (citation omitted). In short, special emphasis is placed on development of the entire record so that a reviewing court can perform its appellate functions. *Cotter v. Harris*, 642 F.2d 700, 704-05 (3rd Cir. 1981).

## 2. Analysis

Plaintiff argues that, because an ALJ is required to explain why he rejects probative evidence, the ALJ's failure to explain his rejection of several medical opinions relating to reaching/neck movement requires remand. (D.I. 14 at 10-12) Specifically, plaintiff claims that the ALJ failed to consider and explain his rejection of: (1) Dr. Aldridge's finding that plaintiff was limited in her ability to reach in all directions; (2) Dr. Helou's finding that plaintiff had a limited range of motion in her cervical spine; and (3) Dr. Somori's notation of a failed cervical laminectomy. *(Id.)*

With respect to plaintiff's argument that the ALJ failed to explain his rejection of Dr. Aldridge's finding, the court finds that plaintiff mischaracterizes Dr. Aldridge's conclusion. Dr. Aldridge's RFC assessment specifically found that plaintiff could frequently (between one-third and two-thirds of her day) reach in all directions, but could not continuously lift overhead; Dr. Aldridge then concluded that plaintiff was capable of a light RFC. Contrary to plaintiff's assertion, this finding does qualify as

probative evidence that would suggest a contrary disposition (and whose rejection would therefore need to be explained).

With respect to Dr. Helou's finding that plaintiff had a limited range of motion in her cervical spine, the court finds that the ALJ explicitly considered this and justified his RFC assessment in spite of this finding. At page six of his decision, the ALJ explicitly notes that Dr. Helou found plaintiff to "exhibit[] limited flexion, extension and lateral rotation in her cervical spine." (D.I. 11 at 17) Subsequently, the ALJ emphasized that he placed great weight on Drs. Venkataramana and Aldridge's opinions that plaintiff was capable of light work despite her cervical impairments. (*Id.* at 25)

Finally, with respect to Dr. Somori's "failed cervical laminectomy" observation, the court notes that the ALJ's decision does not explicitly reference this notation. While the court might ordinarily find this harmless error for many of the reasons defendant sets forth in his brief, because the court already remands on other grounds and this circuit places great emphasis on "explicit" review of all probative evidence, the ALJ should address this notation on remand.[15]

### D. What Is the Appropriate Time Frame for this Decision?

The ALJ concluded his decision by finding that plaintiff "was not under a disability

---

[15] Defendant's brief emphasizes that: (1) Dr. Somori is a pain management physician and not a specialized surgeon like Dr. Venkataramana; (2) the notation was based on subjective complaints and not medical evidence in the record; and (3) the notation is inconsistent with objective medical evidence of record. (D.I. 16 at 12-13) In other words, even though the notation is not explicitly referenced in the decision, the record and the ALJ's decision contain ample reasons for rejecting this observation.

from December 15, 2003 **through the date of [his] decision**" (August 8, 2008).[16] (*Id.*

at 28) (emphasis added)  Plaintiff objects to this final finding, arguing that this disability

determination extends beyond the relevant period of review.[17]  (D.I. 14 at 13)  Both

plaintiff and defendant agree that the relevant period for review is December 15, 2003

(plaintiff's alleged onset date) through December 31, 2006 (plaintiff's DLI).  (D.I. 16 at

17)  The ALJ's decision also acknowledges this as the proper period of review (*e.g.* D.I.

11 at 22), thus contradicting himself regarding the relevant period and extent of his

review.  Given that all sides acknowledge the relevant time period as being December

15, 2003 through December 31, 2006, the ALJ's decision on remand should reflect this.

## V. CONCLUSION

For the reasons discussed above, the court denies both plaintiff's and

defendant's motions for summary judgment and remands the case for further

proceedings consistent with this memorandum opinion.  An appropriate order shall

issue.

---

[16]  Page one of the ALJ's decision also states that plaintiff is not disabled from
December 15, 2003 through the date of his decision.  (D.I. 11 at 12)

[17]  Plaintiff is primarily concerned that this finding could negatively effect her
ability to obtain Supplemental Security Income (SSI) benefits.  (D.I. 14 at 13)

from December 15, 2003 **through the date of [his] decision**" (August 8, 2008).[16] (*Id.* at 28) (emphasis added) Plaintiff objects to this final finding, arguing that this disability determination extends beyond the relevant period of review.[17] (D.I. 14 at 13) Both plaintiff and defendant agree that the relevant period for review is December 15, 2003 (plaintiff's alleged onset date) through December 31, 2006 (plaintiff's DLI). (D.I. 16 at 17) The ALJ's decision also acknowledges this as the proper period of review (*e.g.* D.I. 11 at 22), thus contradicting himself regarding the relevant period and extent of his review. Given that all sides acknowledge the relevant time period as being December 15, 2003 through December 31, 2006, the ALJ's decision on remand should reflect this.

## V. CONCLUSION

For the reasons discussed above, the court remands the case for further proceedings consistent with this memorandum opinion. Plaintiff's motion for summary judgment, therefore, is granted and defendant's motion for summary judgment is denied. An appropriate order shall issue.

---

[16] Page one of the ALJ's decision also states that plaintiff is not disabled from December 15, 2003 through the date of his decision. (D.I. 11 at 12)

[17] Plaintiff is primarily concerned that this finding could negatively effect her ability to obtain Supplemental Security Income (SSI) benefits. (D.I. 14 at 13)